This is 1-2-2-0-9-0 and 1-2-2-1-4-0. K. et al. v. United of Omaha Life Insurance. For argument 15 minutes per side. Mr. Brenner for the telephone. Good morning, your honors. James E. Brenner of the law firm of Clark Hill in Detroit, Michigan. At the outset, let me say that United submits that the case should never have ended up at trial. And it should have been decided at the pre-trial motion stage. United brought a motion for summary judgment based on the breach of contract claim that had been asserted. And it also brought a 12B6 motion based on a negligence claim that had been asserted. The judge listed in his written opinion all the elements which, taken together, show that there was no issue of fact, no genuine issue of material fact, as a breach of contract. The court said nothing about the negligence claim. The negligence claim was based on the same elements of fact as the breach of contract claim. And there was no separate and independent basis for the negligent claim. Instead, however, of granting summary judgment based on the absence of a breach of contract claim that would withstand analysis, the trial court veered off into the direction of an equitable estoppel theory. An equitable estoppel theory is a question of law in the first instance as to whether there is a sufficient factual basis to support equitable estoppel. The trial court found that there was equitable estoppel in the case based on its comparison of the case before it with the Morales decision of the Michigan Court of Appeals. In looking at the Morales decision, the court likened it to the case before it. However, there is no comparison between the two cases. In the Morales case, there was a final notice to the plaintiffs insured which said disregard the prior notice of cancellation. The insurance is still in effect. In the case before us today, the final notice, which the court found in talking about the elements of the case, said there is a need to reinstate if premiums are paid by a certain date, which is stated in the notice, and the insured is still alive, then insurance can be reinstated. What was the date of the notice you're referring to right now? I know there are many, but what's the date of the notice you're referring to? January 13, 2009. Okay. Mr. Brunner, you just said that the district judge found that there was equitable estoppel. No, the district court denied the motion for summary judgment on the basis of equitable estoppel. That there was a question of fact as to whether there was equitable estoppel? Correct. Okay, I think you misspoke. You said that the judge found that there was equitable estoppel. Oh, I'm sorry, Your Honor. I mean, your argument is that the facts which may or may not establish equitable estoppel were not in dispute, and therefore there was no issue of fact for the jury that it was strictly a matter of law. That's correct, Your Honor. Now then, the district court having found as it did, we went to trial. At trial, the equitable estoppel theory disappeared. There was no instruction to the jury regarding it. There was no reference to it in the course of trial. The negligence claim, which the court had declined to say anything about in its decision, also disappeared. No instruction to the jury on that. That didn't harm you, though, right? Oh, it didn't harm us. Right. All that was left then was a breach of contract claim. Now, this case, from the beginning, from the first complaint, through the second amended complaint, through all the pretrial motions, from A to Z at the trial, was about notices, whether notices were sent or not sent, whether notices were received or not received. Because the other side was attacking the presumption of receipt that applies to this situation, United proposed an instruction on presumption of receipt. The district court refused to even discuss that until after the jury had been instructed, which means after oral argument and closing, after the jury was instructed, and after the jury was sent out to delivery. When the district court did allow some discussion as to the presumption of receipt instruction, the court said it was denying it. And I would like to read into the record what the court said because it's so significant, I believe. The court said it was denying it because it had, quote, concluded as a matter of law that this case should not go off on facts which related to whether notices were received or not received or mailed or not mailed. It's more the body of intent of the contract of insurance, the policy, and whether the whole thing together amounted to carrying out the obligations or not, period, close quote. What does that mean? I don't know, Your Honor. I've thought about that several times. I've thought about it for the past few days getting ready for today. I don't know what it means. I know what it means when it says he's not considering or the case shouldn't involve notices, but after that I don't know what it means. Well, it sounds to me like he's saying it depends on the party's intent, not on the plain language of the contract. That's the way I read it. But I'm not, you know, unless the contract's ambiguous, you don't usually look at the party's intent. If the contract's unambiguous, you don't look at anything other than the plain language. Excuse me, Your Honor. There was no allegation in the case of ambiguity. Well, there's a lot of problems here. I have a procedural question that you filed your motion for summary judgment and you started to file your 50A motion for directed verdict, but you didn't really say what the grounds of your directed verdict were, and you just say that we move for judgment as a matter of law. I mean, have you preserved the issue by not specifying the grounds? I tried to specify the grounds, Your Honor. The judge in the district court, rather, indicated that the decision was already made to deny the motion. I know, but you still have to preserve the record. Even if the judge says, I've made up my mind for appellate review, you still have to make a motion. You still have to preserve the record. You have to make an offer of proof if necessary, and I just wonder if you did it here. The court said it would entertain no argument, so I then persisted to the point of saying that we do not think that this case should go forward as a matter of law, and that was about all I got out. Then did you object to the judge cutting you off? I didn't at that point, Your Honor, no. Is that where he threatened you with sanctions or something? He threatened me with sanctions when I persisted in the question of reading the deposition and the evidence, even though the opponent was in the court. That was a little different, yeah. Okay, and then the other thing is, you know, the law is a little unclear whether you have to renew your motion for directed verdict after the close of all the proofs, and here it's clear you did not renew your 50A motion. Are you sure you don't have to? In this instance, I don't think so, because the grounds for saying that the summary judgment motion should have been granted involves a question of law, namely whether there were sufficient elements to support an equitable estoppel theory, which is what the court decided the motion on, so that that's an exception to the Ortiz case. Okay, what's your best authority for that? FDIC v. Amtrust Financial Corporation, 694 Fed 3rd 741, 750 to 751. But there's a whole list of cases. That's 2012. Okay, and that's the holding of that decision? Yes, Your Honor. What was the jury asked to find? I mean, you've talked about what they were not asked to find. I can't find the verdict form. I mean, what did they find, or what were they asked to find? I don't have the verdict form in front of me. What's your best recollection? You lived through this, so what's your recollection? And Mr. Morganroth can correct you if you're mistaken. It was very short, and it seemed to be something along the lines of the whole set of transactions or something for several months leading up to the death of the decedent. Was what? Something like that. But there has to be a question mark at the end, right? I mean, the whole set what? All right, well, we can dig that up. All right. Well, there's no objection as to the verdict form, is there? I mean, that's not an issue on appeal. No, that's not an issue. I just wonder, I mean, what, you know, you said what they weren't instructed about, and I just, what were they asked to focus on and decide? It must have been whether or not there was coverage. That must have been the question mixed in with that other. I don't believe so, Your Honor. Hard to know. There were generic breach of contract instructions, like what's a contract, that kind of stuff. Now, I have not touched on the other errors here, the introduction of spoliation into the case, even though there was no spoliation evidence or motion in the case, the court's failure to allow us to somehow give to the jury the stipulation that was 40-some items long and focused on notice, incidentally. And I've not touched on attorney fees or interest in this case because I think the briefing is sufficient on that, and it's obvious that there's clear error there. If there's no more questions, I'll wait for my rebuttal. Thank you. Thank you, Your Honor. Thanks. If the court please, Mayor Morgenroth, appearing on behalf of the Apoese. In this particular situation, I'd like to just respond to a few things that were just said. The Ortiz case isn't the only case that stands for the purpose that,  you have to renew with 50-B, and once the case is right in the merits, summary judgment does not any longer apply. Aren't you trying to appeal the denial of your summary judgment order as well? Yes, but we requested it subsequently. So you renewed it in the manner you – Renewed it. Okay. But we didn't at the end because we had gotten the verdict. Yeah, sure. Yeah, that's fair. And that was on the fact of – Well, what did you renew? I'm sorry. You moved for a directed verdict after your own proofs? We did not. We had done it in response to their motion for a summary judgment. Okay. And it was on – The question is now you can't – you're arguing they can't appeal the denial of their motion for summary judgment, but you say you can appeal the denial of yours, and what's the basis for that? I'm sorry, Your Honor. The only reason why we can is because we did it at the time they did, but then we get the verdict. You don't make a motion for summary judgment when you get the verdict. You did what? You filed a motion at the same time they did? Is that what you said? We responded to theirs. Before Charles? Under 56F. Okay. We were allowed to get one. We weren't granted it. And by the way, the court also did not even take a declaratory judgment for the court to decide or submit it to the jury. We had a declaratory judgment request. The court didn't do that either, and we had a right one way or the other, but the fact is we got the verdict. Once you get the verdict, you don't renew your motion for summary judgment, and you don't at that time ask for a declaratory judgment because you've already won in the merits, and that's what happened there, Your Honor. The other thing is they didn't object to any of the instructions, let alone file a 50B. The only instruction that they disagreed with or objected to was a presumption of service, and that objection to me was frivolous because, first of all, the court had identified the fact of why it was making that instruction because the case was propounded upon the facts that had nothing to do with service of the payment request. And there was another reason why not. I don't follow that. I mean, service of the payment request, are you talking about receipt of the notice? Yes, the notice. But, I mean, that was extensively argued in trial. Your rebuttal in closing ended talking about that. Isn't that true? It's true, but the point was that there was a factual issue there. They're saying it should have been decided on that basis, period. Is the law? And there was a factual issue, and all we said was it's a factual issue for the jury to decide. The jury did decide on that. But the other factor is, as far as presumption is concerned. Is Mr. Brenner wrong that the law in Michigan has a presumption, holds that there's a presumption of receipt upon mailing? He is correct there. But once you testify, it's presumed, but it's rebuttable. Once you testify you did not receive it, then it's a question of fact. It is not presumed any longer. But somebody must testify it wasn't received. That was number one. The jury has to be told that there is a presumption, but if you, for example, actually believe the testimony, then you may overcome it. Shouldn't they have been told that? Well, no, because then it becomes a factual issue. Well, let me put it this way. Well, let me just put it this way. The fact that your client testifies that she looked through the mail and didn't see it, that does not make the presumption vanish. The jury has to believe that testimony and find it credible in order for the presumption to be overcome. So why shouldn't the jury still? The presumption is there until the jury determines they believe her. That happens in the deliberation room. Why shouldn't they have been told about the presumption before then? There's two reasons. First of all, the court said it was confusing to focus even on that because that was not the issue. Well, the trial focused on it to a large extent. It stayed until the court, all the evidence was in, and then the court felt it was not necessary because you shouldn't. But there was another point, too, that I really want to bring to the court here, and that is the presumption was ill-founded to even start with. The delivery of any notice is supposed to be to the owner of the policy, and to even presume that was delivered is false. But your client is the one who asked for it to be sent to where it was sent. That's undisputed, right? She asked at one point that the address be changed only on the basis of the company because the company got its notice at the company headquarters. She wanted it mailed to the home. The company closed down. She wanted it mailed to the home, addressed to him. But she requested specifically when they knew that the husband was dying on his deathbed, she requested them specifically. And, by the way, the policy also requires them to send it to the owner, but she requested them specifically. At that point, when they were told the husband was dying by the independent insurance carrier and her, I want you to send the notices to me if anything is beyond payment or hasn't been paid because I do not want that policy to cancel, and you send it to me. It was right on the records of the insurance company. They didn't do that. She specifically told them to send it to her. She's the owner. Well, they sent it to where she directed them to send it to, correct? No, she said to me. Let's talk about the address, not the addressee. It went to the address that she told them to send it to, correct? And that was for the owner of the company. Okay, but the answer to that question is correct, right? That is correct. But your objection is it said Sherman K. rather than Claire K., is that correct? That's correct. And he was dying, but she wasn't going to open his mail. Well, two things. From the insurance company. First of all, she looked at the mail, and she saw no envelope coming. She testified to that. She never saw in there that there was such a letter. She looked at all the things. She testified, but Judge Ketledge's point, with which I agree is a very good question, his point is that she asked for it to be mailed there, and the presumption of mailing is crucial. No, Your Honor. Two reasons. Again, she asked. Witnesses can speak. They'll tell what they need to tell to get the million-dollar insurance. They'll say, I never saw it. But the insurance company gets the benefit of that presumption under the law, does it not? First of all, they would, except for two things, Your Honor. Number one, she instructed them. If she instructed to send to her husband. Okay, but even her testimony about what she instructed is subject to a credibility test. Your Honor, that's true. That's for the jury to decide, and they did. But what I am saying is this. Number one, if you're going to rely on the fact she told them to send it to her husband's name and address, that had to do with Claymore Company. Excuse me, but are we unclear about whether or not the claimant lived in the same household? We're not unclear about that. Also, he was a doctor. You don't open his mail. Any more than my wife will ever open my mail because I'm a lawyer. From the insurance company when she has just said, I don't want this policy to lapse, and he's not capable of opening the mail, unfortunately? First of all, that particular notice was sent 25 days after it was supposed to be sent. Well, they have their answer to that. I understand your argument on that. To finally do it when the man's dying. I understand your argument. But if they're going to go by what she said about sending it to somebody that's not even the owner of the policy because that's the address of the company and the company is closed down, they should abide when she says send it to me and tell me. But there's another issue, too. In order for the policy to cease, you've got to send a termination notice. They never did that. And the state law, as we cited it, says it will not terminate it until a termination notice is sent. They never sent that. And they admitted it under oath several times. Dana Austin did. We did not send a termination notice. We never did to them. Years ago, they did. Notices generally said if you don't pay within the grace period, the policy lapses, correct? Yes, but that does not suffice to what the statute requires. It's supposed to say when it lapses. It would be January the 19th. It's supposed to state that. And it's supposed to state the payment has not been made. Okay. Now, I understand your statutory argument. And they sent it after the payment date, 25 days after it's supposed to be sent, and they never sent a termination notice saying under the statute what they're required to say, and that is that the policy has terminated. And by the way, they have another period after that called the special offer. Let me ask you a question, okay? I'm trying to understand your equitable estoppel theory. The policy, the notices that she's getting, as I just mentioned, say if you don't pay within, I guess, the grace period, the policy lapses. So she's getting that, but then they have this special offer period. And she receives notices from the insurance company about that period, and they say we'll reinstate your policy during the special offer period if you pay us by X date and the insurer is alive. That's correct, right? And so your equitable estoppel theory is that your client was led to believe that she could reinstate during the special offer period. That's what she, in fact, attempted to do. I think on February 1st. Even beyond it. Okay. Even beyond it. It was 42 days later. Okay, so. Even beyond special offer. So she was. They never sent a termination notice. So, I mean, the special offer notice is what leads your client to believe that she can reinstate when she sends the check on February 1st. Is that your theory? Even more than that. Beyond the special offer. Okay. Seven times. I understand. But many times. I know, you just said that. Beyond special offer period. But let me just be candid with you about the problem or the concern I have about that theory is you have two conditions in that theory. In the notice, the two conditions. One, send it by X date. And you have, you know, pointedly noted that they disregarded that condition apparently. But it also said every time, eight times, that the insured had to be alive. And he wasn't, unfortunately, when the check was sent in. So why wouldn't she have known that it would not be reinstated? First of all, the special offer period was revised several times. Okay. But let's just take. She didn't get those special offers. I know. I know you were frustrated. She didn't get them. That's number one. She never got them. We don't know who got them. They just know they paid 42 days late. But to the. They didn't get. There's no evidence whatsoever. Would you agree. A notice of special offer. Would you agree that if your client receives a notice that says you have to meet two conditions in order to reinstate during special offer. One of which is the insured is still alive. And she sends a check in when she knows the insured is not still alive. That she ought to know that it's not going to be reinstated. No. Because number one, she didn't get special offer notices. Okay. Let's assume she did. All they know is they paid them. And they paid them beyond the special offer. But if she did get. Let's say this is a hypothetical question. Under that hypothetical. How can she rely on the notice. It says he has to be alive. She has to get the termination. The policy goes. And I understand. That's a separate argument. She dies or not. It goes on until she gets it. Okay. That's number one. Number two. As far as him dying. That's what they were counting on. They were told a few months before he was lying in his bed dying. Well, I mean, nobody stopped the payment from being sent in when they were normally due. I don't know what was going on. But they didn't bar a receipt of payments. Unfortunately, it just wasn't sent. But they did their best. Because they sent the notice 25 days after they're supposed to send it. Well, that's because the prior payment was late. Pardon me? The prior payment was late. Well, that never happened over nine years. Were they late all the time for nine years on this insurance policy? Weren't they late all the time? They were late seven times. That's a lot, isn't it? And if you were really serious and the gentleman's dying, it's weird to think that the insurance company has stopped rather than your client. But the point is that she's watching him die, not them. They're waiting for him to die by all the evidence so that they can put him in a position that she doesn't get paid. That's what they're doing because they've been instructed. And no matter how you go around it, they were instructed to send it to her if there's any late payment. They don't send it to her. She calls them directly. I understand. I want to ask you a quick question before the light goes on. What possible legitimate reason was there to read kind of a redaction of Dena Austin's deposition testimony rather than examine her directly when she's sitting in the courtroom? Well, she was sitting in the courtroom and we were told she was available at that point. The only problem is that she can walk out any time. Why not take a shot at putting her on the stand and see if she makes a run for it, right? Well, that may be so, but, Your Honor, we can't depend upon that. She's sitting right there. That's why her deposition, yeah, and she'd be out in the hallway. We've got a witness on the stand, and then the next thing we know she's gone. I work in that courthouse. It's hard to imagine. So that's your answer, then. It's happened to me before. The other way around where they used the deposition and it was upheld by the appellate court, even though the person was supposedly coming to testify, they told them not to at the last minute. Okay. Then they put in the deposition. All right. That was recently held by the appellate court. I'm sorry, Mr. Morgan. How far in advance of reading the summary did you give the summary to Mr. Brenner? Are we measuring this in minutes or days? You're talking about the deposition? Yes, sir. We had the deposition transcript from the time that the- You read an excerpt in form. They're very unhappy about the manner of the redaction, but I'm not going to that right now. Okay. I'm just curious. I'm trying to recreate in my mind what's going on in the first four courtrooms. But it was given to them in advance. Are we talking minutes in advance? Was it the same day or was it- It would be- Days before. The court requires that you give those particular excerpts to the other side. I know that, but I'm asking when. Was it days before? I believe days. I can't say. Okay. All right. I can say this. There was no objection made whatsoever to anything that was- I thought he almost got sanctioned objecting to the reading of that transcript. But he did not at any time ask for instructions or did he object when certain things that now he's complaining about occurred regarding that transcript at all. And he put it on the stand anyway and had- Five days later. And, I mean, Mr. Morgan, you know as well as anybody, to marinate in that for five days, I mean, that's a nice thing for your- I would like it for me because it gives me five days to prepare. That's what happens. You don't like to go beyond that evening with a witness because when you do, the other side can cross- Yeah, that's true. So as a trial lawyer for 59 years, give me the five days to prepare. I'll read everything and I can pound upon that witness. But he never objected to any of that. Okay. I understand your argument. What he objected to was he should have called her. But just like in the DeLorean case I tried, the DeLorean case that took his deposition, who would expect the defendant not to show up? I think your time has expired. Thank you. All right. Thank you, sir. Very, very briefly, Your Honors. I got the transcript minutes before it was read into evidence, the redacted transcript. Okay. That's all I have. Thank you. Well, what about the notice? Don't run away. Perhaps you want to address the absence of notice that we are told by Mr. Morgan Roth was a very good reason for the jury's verdict, that United didn't give notice that they would terminate as required by Michigan law. The statute. The statute. Well, the first notice said that if the premium isn't paid within the due date or within the grace period, then the policy will lapse. Is that your point, that the statutory notice requirement is fulfilled by that lapse notice? Yes, it is, Your Honor. And if one carefully reads the statute, it doesn't use the term termination notice. What it says is notice must be given 30 days before termination. I'm sorry, please. Did we have that 30 days? Are there 30 days between? Yes. It was sent late, you know, we're told that. Right, because the premium from the last month was paid late. But does that still matter? Did United fulfill the 30-day requirement with that last notice? What happens with the notice is that the time is tacked onto the ending of the grace period. The grace period ended a certain day, and then there were three or four days beyond that when the 30 days were fulfilled, and those were several days before the decedent passed away. So just give me those dates specifically. The date the operative notice was sent for purposes of complying with the statute, what was that date, when did the 30-day period expire in your view, and how does that line up with when Dr. Kay passed away? The notice was sent December 19, 2008. This is for the final payment? Right. Okay. That's that first notice that says must be paid, et cetera. And 30 days from there would be the 11th to the 18th of January. And Dr. Kay passed away on the 23rd of January. But the notice is sent on that date, and the statute says you have to notify the insured 30 days before it terminates. Right. And so in your view, the notice just has to go out more than 30 days before it actually lapses, and it didn't lapse here until when? It lapsed the day the 30 days were up. January 8th. Because the grace period had already expired. Okay. The grace period had already expired, and you feel like we're tacking on the… When did it expire? Let's see. It was before the 18th, but we're tacking on some time. Correct. Okay. We can chase that. Okay. Okay. The notice on the 19th or the 18th says your grace period is now over. No. Okay. It's all part and parcel in the same notice. The first notice said if you do not pay the premium… That's the date of that first notice. That's December 19th. 19th. Okay. 2008. Right. If you do not pay the premium within the due date or within the grace period, the 31-day extension, then the policy will lapse after that. If you add in the statutory notice provision, then if there's any difference between the expiration date of the grace period and the expiration of the 30 days under the statutory notice provision, those days tack on to the end of the grace period, which in this case was several days before the deceased died. Statute doesn't require it to be stated in some certain size font or something. I mean, Mr. Morgenroth does point out it's kind of in the fine print. No. It requires no particular form, no particular letter, no particular font size. The font size is a red herring. What happened here was that the actual notices were reduced in the course of Xeroxing because they're actually old legal size law. But anyway, I'm not going to get into that. Okay, I understand. The exhibits are the reduced version. Yes. If there are no further questions, I'm done. Thank you. Thank you, Your Honors. Okay. We have your case, gentlemen, and the court will issue an opinion in due course. Thank you.